**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SUZANNE CRAWLEY, individually and on
behalf of all others similarly situated,

                    Plaintiff,

v.

DEVA CONCEPTS, LLC, d/b/a
DEVACURL,

                    Defendant.

**CASE NO.**  1:20-cv-03152

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Suzanne Crawley ("Plaintiff") brings this Class Action Complaint against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("Defendant" or "DevaCurl"), individually and on behalf of all others similarly situated. Plaintiff makes the following allegations upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including the investigation of counsel.

## NATURE OF THE ACTION

1.      Plaintiff bring this class action on behalf of herself and all others similarly situated consumers who purchased Defendant's "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, or DevaCurl Ultra Defining Gel (collectively, "the Products"), which are used for personal cosmetic purposes.

2.    The Products are marketed and sold as providing benefits over conventional hair-care and cosmetic products. Contrary to those representations, the Products actually are harmful to consumers and detrimental to the quality and appearance of their hair.

3.    The Products cause hair loss, hair thinning, scalp irritation, and skin burning. Defendants do not warn consumers that use of the Products may result in these adverse outcomes.

4.    Plaintiff brings this class action to put a stop to Defendants' false, deceptive, and misleading advertising and omissions, and to seek damages and other equitable remedies for herself and the other Class members.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including this District, and purposely availed itself of the laws of New York.

7.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District and Defendant is headquartered in and regularly transacts business in this District.

## PARTIES

8.    Plaintiff Suzanne Crawley is a resident of Vale, North Carolina, and she purchased and used the Products within the class period.

9.     Defendant Deva Concepts LLC is a Delaware limited liability company with its principal place of business located at 560 Broadway Suite 206 New York, NY 10012. Defendant markets and distributes the Products throughout the United States and New York State.

## FACTUAL ALLEGATIONS

### *Defendant's Misrepresentations and Omissions About the Products*

10.     Defendant attained prominence in 2002, when it created and developed the formula for the No-Poo Product, which it markets as being sulfate-free, an "innovative new haircare category," and a "game-changing alternative to traditional shampoo."[1]

11.     Defendant markets the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[2]

12.     One of the founders of DevaCurl was quoted as saying that the No-Poo Product "allows your scalp to regulate, and your hair to become more what nature intended."[3]

13.     Consumers purchase Defendant's No-Poo Product based on Defendant's marketing representations that it does not contain sulfate and helps people have healthy, natural hair.

14.     Defendant and third parties have suggested that people with curly hair should not use shampoo because it dries out peoples' curls when their hair is being washed.[4]

15.     The No-Poo Product was touted as the answer to this age-old issue. It does not contain lather or any of the sulfates found in shampoos that dry out curls.[5]

---

[1] https://www.devacurl.com/us/curl-101/our-story
[2] *Id.*
[3] https://www.nytimes.com/2010/09/30/fashion/30Skin.html.
[4] http://nymag.com/strategist/article/best-curly-hair-products-review-devachan-no-poo-conditioner.html.
[5] *Id.*

16.     Many consumers have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[6]

17.     Since the creation of the No-Poo Product, Defendant has formulated, manufactured, marketed and sold many accompanying products for the same purposes.

18.     Despite Defendant's representations, use of the Products causes scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding during normal use by consumers. Many consumers have reported their hair failing out shortly after or while using the Products.

19.     The No-Poo Product causes consumers during normal use—including using the three-step process that Defendant tells consumers to use[7]—to sustain scalp irritation, hair loss, and/or balding. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiff and Class members is embarrassing and can be extreme in certain instances.

20.     The hair loss suffered by Plaintiff and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiff, have experienced hair loss, "shedding" and/or "thinning" after using Defendant's Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

21.     Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[8]

---

[6] https://www.glamour.com/gallery/best-curly-hair-products
[7] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930
[8] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930

With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[9]

22.     Defendant is aware of the issues with its Products, but it conceals and fails to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[10]

23.     Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[11]Incredibly, on Defendant's website, Defendant claims that shedding of hair is "normal":

> If you have curly hair, chances are you've dealt with hair shedding. **For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[12]

24.     Defendant further explains hair loss is more prominent in curly-haired women because, "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts.'[13]

25.     Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[14]

26.     Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[15]

---

[9] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[10] https://www.devacurl.com/blog/hair-shedding-101/
[11] *Id.*
[12] https://www.devacurl.com/blog/hair-shedding-101/
[13] *Id.*
[14] *Id.*
[15] *Id.*

27.    Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.[16]

28.    Defendant further includes a list of recommendations to lessen shedding. None of the recommendations to reduce shedding include ceasing the use of the No-Poo Product or any of the Products:

**How can I lessen the shedding?**

1.    Find the right <u>cleanser and conditioner</u> for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.
2.    Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to <u>clarify</u> and <u>exfoliate</u>.
3.    Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like <u>Wash Day Wonder</u>) before cleansing and finger detangling afterwards can make a world of difference.[17]

29.    Defendant knows the Products cause hair loss and scalp irritation. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018. There have been hundreds of complaints posted on social media sites like Facebook. Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[18] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its Products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[19]

---

[16] *Id.*
[17] *Id.*
[18] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/
[19] https://www.devacurl.com/us/deva-community-statement

30.     Defendant created the "Curl Council" to deal with the consumer backlash as a result of the issues alleged herein, but it still publicly denies that there is a problem with the Products.[20]

31.     Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

32.     Neither the packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:

---

[20] https://www.refinery29.com/en-us/2020/02/9363703/devacurl-hair-loss-damage-controversy.







22 https://www.ulta.com/no-poo-original-zero-lather-conditioning cleanser?productId=xlsImpprod3960027
23 *Id.*
24 https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ
25 *Id.*

33.    Similarly, nowhere on any of the packaging of the other of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.[26]

34.    Far from being the panacea promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

35.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

36.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

37.    By marketing, selling and distributing the Products from New York to purchasers throughout the United States, Defendant represented to consumers that the Products were free of defects, safe, and fit for their ordinary intended use and purpose.

### Defendant's Misrepresentations and Omissions Are Material to Reasonable Consumers

38.    Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide: namely, to promote healthier hair than other traditional cleansers and

---

[26] *See* Appendix A attached hereto.

conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out hair and maintain maximum color.

39.    Consumers also pay a premium for the Products far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar retail products sold at Target for as little as $3.99,[27] a difference of more than $42.

40.    Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

41.    Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

42.    Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products.

*Plaintiff's Experiences with the Products*

43.    Plaintiff purchased the Products for her personal use from Razberry's Hair Salon in Lincolnton, North Carolina, at various times in 2019. Plaintiff purchased numerous varieties of the Products, including Mis-er Right, Low-Poo Delight, One Condition Original, B'Leave In, Light Defining Gel, and Arc Angel Gel.

---

[27] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla-419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE, *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945.

44.     As a result of using the Products, Plaintiff has suffered chemical burns on her face, ears, and hands. She also felt a burning sensation in her eyes. Plaintiff also suffered hair loss as a result of using the Products.

45.     Plaintiff has stopped using the Products. As a result of discontinuing the use of the Products, her hair and skin have begun to improve. However, that improvement has come only after a year of doctor's visits and treatments such as skin care creams.

## The Experiences of Other Consumers

46.     Plaintiff's experiences are not isolated or outlying occurrences. There are many stories online from other Class Members complaining of the same issues with the Products.

47.     As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle "thecurlninja" on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[28]

48.     According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same. Before and after photos show the damage Defendant's Products caused to Ms. Mero's hair:

---

[28] https://abc7ny.com/5906690/.

**Before:**



**After:**



49.     As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than 35,000 members.

50.     According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[29]

51.     According to reports, Ms. Mero isn't alone. Another social media influencer with more than 200,000 subscribers posted her own video on January 31 where she speaks about her own experience with Defendant's products.[30]

52.     According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[31]

53.     Similarly, a thread on Sephora originally posted in 2016, is now flooded with comments from customers complaining about the products and looking for answers.[32]

54. The complaints are endless:



---

[29] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

[30] *See* https://www.youtube.com/watch?v=nuo8UCcyDhg ("Why I Stopped Using DevaCurl")

[31] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

[32] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473

55.    There are numerous other complaints online on websites such as https://community.sephora.com/, which date back several years. These raise similar complaints.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action on behalf of herself and the following Class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

**Nationwide Class: All persons in the United States who, during the maximum period permitted by the law, purchased the Products for personal, family, or household use and not for resale.**

57.    Plaintiff brings this action on behalf of herself and the following Subclass:

**North Carolina Subclass: All persons in North Carolina who, during the maximum period permitted by the law, purchased the Products for personal, family, or household use and not for resale.**

58.    Excluded from the Class and Subclass are: people who purchased the Products directly from Defendant; Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; and the judicial officers to whom this case is assigned, including their staff and families.

59.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and Subclass, including Plaintiff.

60.    Plaintiff seeks only economic damages and equitable relief caused by the purchase of Products sold not as advertised. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or the Class Members.

61.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

62.    <u>Typicality</u>: The claims of Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she incurred damage as a result of overpaying for Products that were sold not as advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior, which was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

63.    <u>Commonality and Predominance</u>: Plaintiff has numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a.  Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

b.  Whether and when Defendant knew the Products were defective;

c.  Whether Defendant failed to disclose the defect to the public;

d.  Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

e.  Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by making representations and omissions that were misleading to a reasonable consumer;

f.  Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

g. Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiff and Class Members have suffered an ascertainable loss of monies and/or property and/or value; and

h. Whether Plaintiff and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the amount and/or nature of any such relief.

64. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

65. <u>Superiority:</u> Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because the common questions identified above predominate over any individual questions. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

66.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## COUNT 1
## UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class, and, Alternatively, the North Carolina Subclass)**

67.     Plaintiff conferred benefits on Defendant by purchasing the Products at a premium price. Defendant has knowledge of such benefits.

68.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products because Defendant realized substantial revenues at the expense of Plaintiff and Class Members. Defendant obtained a benefit (revenue based on its deception and sale of Products that were unsafe and sold not as advertised) that was a detriment to Plaintiff and Class Members (payments for Products sold based on Defendant's deception and with undisclosed safety risks). It is unfair, unjust, and in violation of principles of good conscience for Defendant to retain that benefit at the expense of the Class Members.

69.     On behalf of herself and the Class Members, Plaintiff seeks disgorgement of all revenue and profits resulting from the sale of the Products and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution. Plaintiff also seeks injunctive and other equitable relief to put a stop to Defendant's unfair, deceptive, and injurious conduct, including to cease selling the Products in a false, deceptive, or misleading manner and to engage in an corrective advertising campaign.

<u>**COUNT 2**</u>
<u>**Violation of North Carolina's Unfair and Deceptive Trade Practices Act**</u>
<u>**N.C. Gen. Stat. § 75.1-1, *et seq.***</u>
**(On behalf of the North Carolina Subclass)**

70.     It is unlawful to engage in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1.

71.     Defendant misled Plaintiff and reasonable consumers by making the following marketing representations, which, as described above in more detail, are false, deceptive, and misleading to a reasonable consumer: that the Products promote healthy hair, are "free of harsh ingredients," are "made with nourishing, hydrating ingredients," are "free of sulfates, parabens, and silicons to gently cleanse curls," are sourced from "the highest-quality, good-for-you ingredients from around the world," and give "your curls what they need and nothing they don't."

72.     Contrary to Defendant's misrepresentations and omissions, the Products cause hair loss, damage hair, cause scalp irritation, and are harmful to use.

73.     Defendant's misrepresentations and omissions are unfair and deceptive acts or practices in and affecting commerce.

74.     Defendant's misrepresentations and omissions are material to a reasonable consumer because they go to the core functionality of the Products—hair care—and affect the health of consumers' hair and skin.

75.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions because they appeared on the packaging and other marketing materials available to all consumers at the point of sale.

76.     If Plaintiff and Class Members had known the truth about the Products, they would not have purchased and used them.

77.     Plaintiff and Class Members have been damaged as the direct and proximate result of Defendant's misrepresentations and omissions, and accordingly, they seek actual damages, treble damages, and attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16. Plaintiff also seeks injunctive and other equitable relief to put a stop to Defendant's unfair, deceptive, and injurious conduct, including to cease selling the Products in a false, deceptive, or misleading manner and to engage in a corrective advertising campaign.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Classes and Plaintiff's attorneys as Class Counsel;

b.  For an order declaring that Defendant's conduct violates the laws referenced herein;

c.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.  For actual and treble damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief, including an order compelling Defendant to cease selling the Products in a deceptive and misleading manner;

h.  Any other injunctive or equitable relief the Court may find just and proper; and

i.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demand a trial by jury on all claims so triable.

Dated: April 21, 2020                 Respectfully submitted,


                                       */s/ Jonathan K. Tycko*
                                      Jonathan K. Tycko (NY Bar No: 2568483)
                                      Hassan A. Zavareei*
                                      **TYCKO & ZAVAREEI LLP**
                                      1828 L Street NW, Suite 1000
                                      Washington, D.C. 20036
                                      Telephone: (202) 973-0900
                                      Facsimile: (202) 973-0950
                                      jtycko@tzlegal.com
                                      hzavareei@tzlegal.com


                                      **PEARSON, SIMON & WARSHAW, LLP**
                                      Melissa S. Weiner*
                                      mweiner@pswlaw.com
                                      Joseph C. Bourne*
                                      jbourne@pswlaw.com
                                      800 LaSalle Avenue, Suite 2150
                                      Minneapolis, MN 55402
                                      Telephone: (612) 389-0600
                                      Facsimile: (612) 389-0610

                                      *pro hac vice to be filed*

                                      Attorneys for Plaintiff